IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Posnet Services, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05 C 5577 |
| | ) |
| William R. Cunningham and | ) |
| Cunningham Electronics Corporation, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant William R. Cunningham's ("Cunningham") and Defendant Cunningham Electronics Corporation's ("CEC") motion to dismiss and motion in the alternative to transfer. For the reasons stated below, we deny Defendants' motion to dismiss and grant Defendants' motion to transfer.

### BACKGROUND

Plaintiff POSnet Services, LLC ("Posnet") alleges that it owns an electronic clearing network and that it conducted negotiations with Cunningham, during which Cunningham represented that he developed a "coupon terminal" for use in retail

1

outlets to automate the processing of paper-formulated coupons. Cunningham allegedly indicated that he and CEC needed an electronic infrastructure and clearing system from Posnet. (Compl. Par. 8). Posnet alleges that on December 23, 2003, it entered into a joint venture agreement ("Agreement") with Cunningham and CEC.

According to Posnet, the terms of the Agreement obligated Cunningham and CEC to provide "Settlement Services" for the redemption of the coupons, which included the requirement that payments to retailers were to be made on a next-day basis and payments to manufacturers were to be made on a weekly basis. (Compl. Par. 14, 16). Posnet contends that Cunningham and CEC breached the Agreement by failing to provide "viable and competitive settlement services." (Compl. Par. 20, 23).

Posnet further alleges that Defendants were obligated under the Agreement to provide functioning coupon terminals to Posnet and Defendants represented that they could provide "production-ready terminals." (Compl. Par. 24-26). Posnet contends that Defendants failed to meet the scheduled deadlines for the provision of the terminals. Such a failure was deemed by Posnet to be another breach of the terms of the Agreement.

Posnet also alleges that Defendants desired to copy the technological infrastructure developed by Posnet and that Defendants secretly contacted third-party developers to build and copy Posnet's electronic clearing network in violation of the confidentiality and intellectual property provisions of the Agreement. Finally,

2

Posnet claims that when they complained to Defendants about Defendants' alleged violations of the Agreement, Defendants threatened to stop funding for the joint venture in order to coerce Posnet into signing an amended Agreement.

Defendants filed an action against Posnet in Illinois state court addressing matters that are related to the matters that are before this court. Five days later, Posnet brought the instant action. Posnet includes in its complaint a breach of contract claim (Count I), an Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, claim (Count II), a misrepresentation claim (Count III), and a claim for a declaratory judgment (Count IV). Defendants' state court action was subsequently removed to the United States District Court for the Southern District of Illinois ("Southern District").

On October 12, 2005 Defendants moved to dismiss the instant action pursuant to Federal Rule of Civil Procedure 12(b)(1) and in the alternative to transfer the action to the Southern District. On October 18, 2005, we dismissed the instant action due to Posnet's failure to provide specific jurisdictional allegations in its complaint. Posnet subsequently provided the court with additional facts and documentation regarding the court's jurisdiction and on November 29, 2005, we reinstated the instant action and Defendants' motion to dismiss and motion to transfer.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In order to transfer a case pursuant to 28 U.S.C. § 1404(a), the transferor court must first find that: 1) venue is proper in the transferor district, *see Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir. 1986)(stating that a court "in which suit is filed with proper venue" may transfer an action pursuant to § 1404(a)), and 2) venue is proper in the transferee district, *see* 28 U.S.C. § 1404(a)(stating that transfer can only be made to a district in which the action "might have been brought").

## DISCUSSION

Defendants argue that the action should be dismissed due to lack of subject matter jurisdiction and in accordance with the first-to-file doctrine and the *Colorado River* abstention doctrine. Defendants argue in the alternative that the action should be transferred to the Southern District.

### I. Subject Matter Jurisdiction

Defendants argue in their motion that Posnet has failed to provide sufficient details regarding the citizenship of Posnet's sole member and thus has failed to show that the court has diversity jurisdiction. However, the lack of specificity in the complaint was the basis for our prior dismissal of this action, and as is indicated

4

above, Posnet has remedied the deficiencies in its pleading. Therefore, Defendants' arguments regarding diversity jurisdiction are now moot.

II. First-to-File Doctrine

Defendants argue that the court should either dismiss or transfer the instant action to the Southern District pursuant to the first-to-file doctrine. In support of the first-to file doctrine, Defendants cite *A.P.T., Inc. v. Quad Environmental Technologies Corp., Inc.*, 698 F.Supp. 718, 721 (N.D. Ill. 1988), which provides that when there is duplicative litigation, "federal courts have adhered to the general rule that 'as principle of sound judicial administration, the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action,' or unless there are special circumstances which justify giving priority to the second." *Id.* (quoting *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969)). However, the Seventh Circuit has avoided a rigid application of the first-to-file doctrine. *See Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624, 628-29 (7th Cir. 1995)(stating that "[t]his circuit does not rigidly adhere to a 'first-to-file' rule"); *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 750-51 (7th Cir. 1987)(stating that "[t]his circuit has never adhered to a rigid 'first to file' rule" and quoting *Technical Tape Corp. v. Minnesota Mining & Mfg. Co.*, 135 F.Supp. 505 (S.D.N.Y.1955), for the proposition that "the court is not called upon merely to say which side won the hundred yard dash to some

5

courtroom").

Defendants also argue that the first-to file doctrine is in line with "hornbook law" and cite to CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3854 (2d ed. 2005). (Reply 1). However, this case is proceeding in a court of law rather than a law school classroom and accordingly we are bound by Seventh Circuit precedent rather than "hornbook law." As Defendants acknowledge, their action was filed only five days before Posnet brought the instant action. (Mot. 8). The mere fact that Defendants' suit was filed first does not justify a dismissal of the instant action. The Seventh Circuit has made it clear that such a technical application of the law would merely encourage a race to the courthouse that would not promote the efficient operation of the judicial system. *See, e.g., Tempco Elec. Heater Corp.*, 819 F.2d at 750-51. Therefore, we shall not dismiss the action pursuant to the first-to-file doctrine.

II. Abstention

Defendants argue that we should abstain from the instant action pursuant to the *Colorado River* abstention doctrine. Defendants cite *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004), which states that a federal court may abstain from hearing a case "in exceptional circumstances when there is a concurrent state proceeding and the stay would promote 'wise judicial administration.'" *Id.*(quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976)). However, there

is not a concurrent state proceeding that corresponds to the instant action. The state proceeding initiated by Defendants has been removed to federal court. Second, to decide whether abstention is proper, the court must first determine "whether the concurrent state and federal actions are actually parallel." *Id.* If the suits are parallel, the court should then consider a variety of factors that include: "(1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim." *Id.*

In the instant action, the alternative forum, the Southern District, is simply another federal district court in the same state as this court. The above factors, such as the governing state law in this action or the inconvenience of proceeding in federal court, do not support an abstention by this court because they would not be altered if the parties proceeded in the Southern District rather than the Northern District of Illinois ("Northern District"). Also, the proceedings in the Southern District litigation could not be deemed to be progressing in such a manner in comparison to the instant action that abstention would be warranted. A federal court has "a 'virtually unflagging obligation" to exercise the jurisdiction provided to it by

7

law. *Id.* Thus, a consideration of the above factors shows that abstention by this court is not appropriate in this instance.

III. Transfer of Action

Defendants also move to transfer the instant action to the Southern District pursuant to 28 U.S.C. § 1404(a) because it is a more appropriate venue.

A. Appropriate Venue

As is indicated above, in order to transfer this action to the Southern District pursuant to 28 U.S.C. § 1404(a), venue must be proper in the Southern District and in the Northern District. Pursuant to 28 U.S.C. § 1391, "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391.

The parties do not deny that the Northern District and the Southern District are both proper venues for this action. Clearly, a substantial part of the events involved in this action occurred in both the Northern District and the Southern

District and accordingly venue is proper in both Districts.

### B. Posnet's Choice of Forum

Posnet, as Plaintiff, chose the Northern District as the forum to resolve the instant dispute. In considering whether to transfer an action, the court should "give some weight to the plaintiff's choice of forum." *Federal Deposit Ins. Corp.*, 592 F.2d at 368; *see also Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989)(stating that "some weight must be given to [a plaintiff's] choice of forum"). A transfer pursuant to 28 U.S.C. § 1404(a) should not merely "shift the convenience from one party to another," and the choice of a forum by a plaintiff should not be "lightly . . . disturbed." *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1259 (7th Cir. 1977); *see also Heller Financial, Inc.*, 883 F.2d at 1294 (expressing concern that a transfer would merely shift the inconvenience to the plaintiff). However, whenever the plaintiff and defendant are in different states, there will inevitably be an inconvenience to one side. *In re National Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003). When the potential inconvenience to the plaintiff and defendant are comparable, "the tie is awarded to the plaintiff . . . ." *Id.*; *see also Heston v. Equifax Credit Info. Servs. LLC*, 2003 WL 22243986, at *1 (N.D. Ill. 2003)(stating that plaintiff's choice of forum is given less weight if the case has no "significant connection to the chosen forum").

In the instant action, Posnet's choice of the Northern District is entitled to

9

deference, but its choice is not dispositive. There is no overriding reason, based upon the facts of this case, that this action should remain in this district. Posnet certainly did not have a compelling reason to bring the action here in light of the fact that the important events that are at the core of this action occurred in the Southern District.

### C. Convenience of the Parties and Witnesses

In the instant action, CEC is located in the Southern District and thus it would be more convenient for Defendants to proceed near their ongoing operations. In addition, CEC's documents and the witnesses with knowledge of the activity between the parties regarding the Agreement and amended Agreement are located in the Southern District. Such testimony will be extremely relevant in this action as it will address the issues that are at the core of the instant action. Posnet claims that it has offices located in the Northern District that would make the Northern District more convenient for it. Posnet also contends that it will call witnesses that reside in Chicago. However, Posnet's proposed witnesses will simply be called to address maters such as the designing, programming, maintenance, and operational work of Posnet's software. Such issues are merely tangential in the instant action. Other proposed witnesses by Posnet will likely testify on matters that could easily be covered by other witnesses. Posnet concedes that its Chief Executive Officer who will be providing key information resides in Connecticut and, thus, will have to

travel to either the Northern District or the Southern District. (Smith Decl. Ex 2 Par. 3). Posnet cannot swing the convenience factor in its favor merely by compiling a lengthy list of witnesses that are neither necessary nor warranted. *See American Family Ins. Suddarth v. Wal-Mart Stores, Inc.*, 2003 WL 1895390, at *2 (N.D. Ill. 2003)(stating that "the defendant will not be granted a transfer merely by presenting a long list of witnesses and claiming their inconvenience" and that "[c]ourts go beyond simply looking at the number of witnesses and weighing the quality and nature of their proposed testimony"). Therefore, we conclude that the convenience of the parties and witnesses factor favors a transfer to the Southern District.

### D. Interest of Justice

We must also consider the interest of justice factor in making our determination. In addressing the interest of justice factor, a court may consider: 1) whether a transfer promotes the efficient administration of justice, 2) whether the action could be consolidated with other actions in the transferee district, 3) whether the judges in the transferee district are more familiar with the pertinent state law, 4) whether jurors in a particular district have a "financial interest in [the] case," and 5) which district would have jurors that could "best apply community standards." *Coffey*, 796 F.2d at 220-21, 221 n. 4. The court should also consider whether the transferee district has a lighter docket than the transferor district. *In re National Presto Indus., Inc.*, 347 F.3d at 663. In addressing the interest of justice factor, the

transferor court should focus on whether the proposed transfer would promote the "efficient functioning of the courts." *Coffey*, 796 F.2d at 221. The interest of justice factor does not involve a consideration of the merits of the plaintiff's claim. *Id.*

As is indicated above, Posnet, in attempting to avoid a transfer, has included what appear to be unnecessary witnesses on its witness list. Such an approach by Posnet is a clear indication that Posnet does not have the interests of judicial efficiency in mind in resisting the transfer. Requiring this court to waste time at trial for the testimony of witnesses that are unnecessary and were simply put on the witness list to prevent a transfer would not promote judicial efficiency. Also, based upon the parties' representations to this court, it appears that the matters in the instant action are related to the matters in the Southern District and could be potentially consolidated with the proceedings in the Southern District. Defendants argue that the Southern District's docket is lighter than the docket of the Northern District and Posnet has not shown this contention to be untrue. Clearly, the instant action could proceed more efficiently and be handled in a more comprehensive and effective manner in the Southern District. Thus, the interest of justice factor favors a transfer. Therefore, based on all of the above, we grant Defendants' motion to transfer to the Southern District.

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' motion to dismiss and grant Defendants' motion to transfer this action to the Southern District of Illinois.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 11, 2006